# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WESTGATE LVH, LLC, | Case No. 2:17-cv-01731-RFB-NJK |
| Plaintiffs, | ORDER |
| v. | |
| TRUSTEES OF THE NEVADA RESORT ASSOCIATION—IATSE LOCAL 720 PENSION TRUST, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court are Defendant's Motion for Summary Judgment (ECF No. 67) and Plaintiffs' Motion for Summary Judgment (ECF No. 68). For the reasons stated below, the Court grants Defendant's Motion and denies Plaintiffs' Motion.

## II. PROCEDURAL BACKGROUND

Plaintiffs filed the Complaint (ECF No. 1) in this action on June 22, 2017. Plaintiffs filed the First Amended Complaint (ECF No. 58) on September 14, 2018 to which Defendant filed an Answer with a Counterclaim (ECF No. 59) on September 28, 2018. On January 25, 2019 the parties filed the instant motions before the Court.

## III. FACTUAL BACKGROUND

### a. Undisputed Facts

The Court finds the following facts to be undisputed.

Defendant is a group of trustees of the Nevada Resort Association, International

Association of Theatrical Stage Employees (I.A.T.S.E.) Local 720 Pension Trust (also called the "Trust" by Plaintiffs and the "Plan" by Defendant). Non-party Colony Resorts LVH Acquisitions, LLC ("Colony") operated the Las Vegas Hilton, and then the LVH-Las Vegas Hotel and Casino, from 2004 through (on or about) November 1, 2012. Colony was the entity responsible for making contributions to the pension fund of the Plan for covered employees from 2004 through (on or about) November 1, 2012. As of January 2010, the Plan had developed underfunded liability, and a rehabilitation plan was implemented to bring its funding level out of critical status. Colony was aware of the Plan's underfunded status. Colony requested a withdrawal liability estimate from the Plan showing that Colony would incur $1,260,047 in withdrawal liability should Colony withdraw on September 1, 2011.

As Colony was in default on its loans, creditor Goldman Sachs Mortgage Company initiated judicial foreclosure proceedings against Colony on September 13, 2011. <u>Goldman Sachs Mortgage Co v. Colony Resorts LVH Acquisitions, LLC,</u> No A-11-648281-B XI (Clark Co., Nev. Bus. Ct.).

The Las Vegas Hilton was renamed the LVH-Las Vegas Hotel and Casino on or about January 1, 2012.

After initiation of the foreclosure action, Colony requested an updated withdrawal liability estimate, which was received on January 5, 2012. On January 6, 2012, Ronald Johnson was appointed by the court as a Receiver during the foreclosure proceedings. On February 2, 2012, Johnson took over management and exclusive control of the property from Colony, while Colony maintained ownership.

Colony withdrew from the Plan effective (on or about) November 1, 2012.

On November 1, 2012, ownership of LVH-Las Vegas Hotel & Casino was transferred to 3000 Paradise road, LLC through foreclosure. A letter dated August 31, 2012, sent to the president of the IATSE union, gave notice of the foreclosure sale.

3000 Paradise Road, LLC entered into an agreement whereby Plaintiff NAV-LVH, LLC operated the hotel from November 1, 2012 through December 31, 2014. Plaintiff NAV-LVH made no major changes to the operations or staff of the property.

On June 30, 2014, Plaintiff Westgate acquired the owner entity, 3000 Paradise Road, LLC, and re-named it Westgate Las Vegas Resort, LLC. Again, no major changes were made to the operations or staff of the property.

On January 1, 2015, Westgate acquired the hotel operating entity, Plaintiff NAV-LVH, and that entity became employer for the property. Again, no major changes were made to the operations or staff of the property.

On October 21, 2015, the Plan sent Plaintiffs notice that it was asserting successor withdrawal liability against them.

On June 6, 2016, the Plan sent a letter to Colony, asserting withdrawal liability in the amount of $1,786,395, and requesting quarterly payments.

On October 21, 2016, the Plan initiated a lawsuit against Colony in federal court: Case No. 2:16-cv-02472-APG-CWH (D. Nev.). After Colony defaulted, the Plan obtained on January 9, 2017 a default judgment against Colony for withdrawal liability in the amount of $2,271,689. Colony is defunct and failed to pay the judgment.

On November 28, 2017, NAV-LVH executed a successor collective bargaining agreement ("CBA") with the IATSE Union to be the employer for the IATSE bargaining union members. Prior to that year, NAV-LVH had adhered to the old CBA originally executed by Colony.

The Plan has been underfunded since 2010 and remains underfunded to the present day.

### b. Disputed Facts

The parties dispute whether Defendant was on notice of the change in ownership in 2012. Specifically, the parties dispute whether Defendant received the August 31, 2012 letter and whether the letter, which predates the foreclosure sale, is sufficient to show knowledge of the sale actually occurring. Defendant argues that the Union and the Plan are distinct entities with different addresses. The letter notifying that a foreclosure sale was scheduled was addressed to the Union. Defendant argues that neither the Union nor the Plan was notified after the foreclosure sale occurred. Defendant contends that it had no notice of the change in ownership until a January 12, 2015 email.

The parties also dispute whether the Wind-Down order incorporated the receiver's request via motion that the court relieve Colony's successors of "liabilities relative to unfunded union pension obligations."

Finally, the parties dispute whether Westgate had any interest or involvement at the time of the foreclosure sale and through the time that Plaintiff NAV-LVH, LLC operated the hotel from November 1, 2012 through December 31, 2014.

## IV. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014).

If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## V. DISCUSSION

### A. Successor Liability

In the context of labor and employment law, "federal courts have developed a common-law doctrine of successorship liability that 'provides an exception from the general rule that a purchaser of assets does not acquire a seller's liabilities.'" Resilient Floor Covering Pension Tr. Fund Bd. of Trs. v. Michael's Floor Covering, Inc., 801 F.3d 1079, 1090 (9th Cir. 2015) (quoting

Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc., 59 F.3d 48, 49 (7th Cir. 1995)). In Heavenly Hana, LLC, the Ninth Circuit held that, "[I]n order for an asset purchaser to incur withdrawal liability, it must (1) be a successor, and (2) have notice of the withdrawal liability." Heavenly Hana, LLC v. Hotel Union & Hotel Indus. of Hawaii Pension Plan, 891 F.3d 839, 844 (9th Cir. 2018) (citing Resilient Floor, 801 F.3d at 1084). With regard to the first prong, the "primary question" in evaluating successorship is "whether, under the totality of the circumstances, there is substantial continuity between the old and new enterprise." Resilient Floor, 801 F.3d at 1090 (citation and internal quotation marks omitted). In making this determination, courts consider: "[1)] Whether there has been a substantial continuity of business operations; [2)] whether the new employer uses the same plant; [3)] whether the same or substantially the same work force is employed; [4)] whether the same jobs exist under the same working conditions; [5)] whether the same supervisors are employed; [6)] whether the same machinery, equipment, and methods of production are used; and [7)] whether the same product is manufactured or the same service is offered. Id. at 1090-91 (quoting N.L.R.B. v. Jeffries Lithograph Co., 752 F.2d 459, 463 (9th Cir. 1985)).

The legal standard for successive liability under Heavenly Hana is satisfied. Defendant successfully argues that a totality of the circumstances indicates there is "substantial continuity between the old and new enterprise." Plaintiffs substantially continued Colony's operations. The hotel and casino continued to operate at the same location, in the same way, with substantially the same staff, operations, and services. Indeed, Plaintiffs do not seriously contest that they are subject to successor liability. Accordingly, it is undisputed that the Resilient Floor factors are satisfied, and that Plaintiffs are a successor.

**B. Notice**

Heavenly Hana's second prong requires that an asset purchaser also have notice of the withdrawal liability in order to incur such liability. Constructive notice is sufficient to satisfy this requirement. See Heavenly Hana, 891 F.3d at 845–46. Constructive notice is notice of any facts that reasonable care or diligence would uncover. Id. at 845. It exists for an asset purchaser only

"when three conditions are met: (1) the purchaser qualifies as a successor; (2) the relevant pension plan is underfunded; and (3) a purchaser using reasonable care or diligence would have discovered the withdrawal liability." Id. at 847. Businesses under common control are treated as a single employer, such that notice to one constitutes notice to all. Teamsters Pension Tr. Fund-Bd. of Trs. of W. Conference v. Allyn Transp. Co., 832 F.2d 502, 506 (9th Cir. 1987).

Defendant has demonstrated as a matter of law that Plaintiffs were on both actual *and* constructive notice of the liability.

With regard to actual notice, Defendant provides evidence that Goldman Sachs had a "data room" containing all withdrawal liability estimates and that this data was provided to Westgate. Specifically, Defendant cites to deposition testimony by Richard Case, Goldman Sachs VP, who testified that he had specific conversations with Tom Dugan, CFO of Westgate, about unfunded pension liabilities or withdrawal liability in 2013. ECF No. 67-4, Exhibit 21, at 39–42. While Plaintiffs contest this statement as inadmissible hearsay, Defendant asserts that it is a) a party admission, and more pointedly, b) not being used for the truth of the matter asserted. The Court finds that this statement is likely to be available in an admissible form for trial and considers it as evidence of actual notice.

Moreover, even if actual notice were in dispute, Defendant has satisfied the notice prong by establishing that Plaintiffs had constructive notice, which is proved here on the basis of undisputed facts. In Heavenly Hana, the Ninth Circuit outlines steps that a reasonable purchaser of a hotel with unionized employees would have taken to determine if withdrawal liability existed: " [1] reviewed Plan documents publicly available on the internet, [2] asked [the seller] to provide all Plan notices rather than rely on [the seller] to parse whether the notices revealed unfunded liabilities, or [3] reached out to the Plan directly . . . . [or] [4] request[ed] from the Plan 'the estimated amount which would be the amount of such employer's withdrawal liability.'" 891 F.3d at 847-48 (citations omitted). Because "[a]ny of these four reasonable actions" would have revealed the withdrawal liability, the Court there found that the buyer was on constructive notice. Id. at 48.

Here, Defendant has shown that Colony prepared a *public filing* noting the Plan's critical

status. ECF No. 67-3, Exhibit 8. It is further uncontested that the Navegante Group continued to operate pursuant to the terms of the CBA (up through the new CBA implemented November 28, 2017) and to make the required contributions to the Plan. The Seventh Circuit has held that merely knowing that a union pension fund *exists* is constructive notice of successor liability. Bd. of Trs. of Auto. Mechanics' Local No. 701 Union & Indus. Pension Fund v. Full Circle Grp., Inc., 826 F.3d 994, 997 (7th Cir. 2016). Consequently, the Court finds that Plaintiffs were necessarily on constructive notice of the Plan.

Accordingly, because Plaintiffs were both successors to Colony and had actual and constructive notice of withdrawal liability thereby satisfying the standard set in Heavenly Hana, Plaintiffs acquired withdrawal liability.

**C. Fairness**

This determination does not necessarily end the inquiry. "Because the origins of successor liability are equitable, fairness is a prime consideration in its application." Sullivan v. Dollar Tree Stores, Inc., 623 F.3d 770, 782 (9th Cir. 2010) (quoting Criswell v. Delta Air Lines, Inc., 868 F.2d 1093, 1094 (9th Cir. 1989)). "Courts have stressed the intensely fact-specific nature of the inquiry." Id. Thus, "[e]ven when the requirements for constructive notice are met, in certain instances fairness could militate against imposing successor liability." Heavenly Hana, 891 F.3d at 847.

Plaintiffs make a number of equitable arguments to support their claim that they are nonetheless not liable for pension withdrawal liability. First, they argue that because the property was possessed by a Receiver and then purchased at foreclosure, there was no negotiation over sales price to consider potential withdrawal liability, nor any opportunity for the purchaser to structure the deal to protect the interests of the buyer in light of any risk of withdrawal liability. They further argue that the Wind-Down Order, which described which liabilities would follow the property and which would be retained by Colony, (impliedly) set forth unpaid pension contributions as retained by Colony. Additionally, Plaintiffs assert that, as a matter of public policy, it would chill similar foreclosure sales if successor liability were imposed in this context. Finally, Plaintiffs argue that

Defendant is, as an equitable matter, too late to seek to impose successorship liability. They assert that Defendant received notice of the impending foreclosure sale on August 31, 2012. Colony withdrew on October 21, 2012. Plaintiffs are downstream purchasers that did not acquire the property until 2014 and did not become the employer of the property until 2015. The Plan did not seek liability against Colony until June 6, 2016 and did not seek liability against Plaintiffs until October 21, 2016. Plaintiffs argue this timeline suggests that Defendant did not timely use reasonable care or diligence to discover pension withdrawal liability and therefore that it is only fair for successor liability to be cut off.

Defendant counters by presenting evidence that NAV-LVH was part of the successor employer-controlled group since Colony's withdrawal from the Plan and that Plaintiffs mischaracterize the idea that the purchaser could not negotiate; bargaining power in the context of an auction is the decision to bid less. Defendant also indicates that 3000 Paradise bought the property at auction for $40 million and then later sold it to Westgate for $150 million, suggesting that the purchase price may have accommodated the outstanding withdrawal liability of the Plan. Lastly, as discussed *supra*, Defendant establishes that Plaintiffs were on both actual and constructive notice of the liability, and therefore to the extent they made a poor financial decision, that is not the Plan's responsibility.

Defendant further counters that the state court Wind-Down order says nothing on its face about withdrawal liability. However, even to the extent the order suggests that Colony retains the liability, Defendant argues that ERISA preempts the foreclosure proceedings from deciding successor withdrawal liability. ERISA supersedes "any and all State laws," including "State action having the effect of law," which "relate[s] to any employee benefit plan" governed by ERISA. 29 U.S.C. §§ 1144(a) & (c)(1). Defendant also contests the idea that imposition of successor liability would chill sales in a meaningful or relevant way. As for Plaintiffs' argument that Defendant did not timely use reasonable care or diligence to discover the pension withdrawal liability, Defendant states that it did not in fact receive notice of the change in ownership in 2012. It asserts that the Property did not notify the Plan of the change in ownership until January 12, 2015. Moreover, Defendant notes that the statute of limitations for a withdrawal liability claim is six years. 29

U.S.C. § 1451(f). Because their suit is timely as a matter of law, Defendant argues that there is no reasonable equitable basis to find that it has been untimely filed.

Indeed, Defendant argues to the contrary that Heavenly Hana's fairness factor weighs in its favor. Absent judgment in Defendant's favor, employees' retirement benefits will suffer, and Plaintiffs will reap a windfall while continuing to profit from the labor of the same skilled workforce. Moreover, Defendant identifies that the liability at issue is less than one percent of what Westgate spent to purchase and rebrand the property.

The Court finds that equitable considerations do not weigh in Plaintiffs' favor. Regarding the terms of the Wind-Down Order, Plaintiffs read too much into the order "granting" a motion which set forth various proposed liability assignments. ECF No. 68-2. The memorandum of points and authorities accompanying the motion did say that Colony would retain "liabilities relative to unfunded union pension obligations," id. at 43, but the court order itself makes no mention of this, nor does it expressly incorporate this filing in any way. It would not be reasonable for Plaintiffs to have relied on this court's order to infer that their purchase strictly could not have carried successor liability under the Plan. As for the general public policy of allowing liability to follow a property after foreclosure, Plaintiffs do not persuade the Court that chilling of such sales is a relevant equitable concern. Distressed businesses can cause successor liability, which would simply factor into the value of the property at foreclosure. The "notice" element of the standard satisfies the only public interest concern related to such a sale. Moreover, the Court has found that the purchaser was on notice in any event and therefore cannot assert a chilling effect to a fact of which it was aware.

As for timeliness, though the parties quibble over whether Defendant had notice of the change in ownership in 2012 or 2015, it makes little difference because the action is brought within the express six-year statute of limitations under federal law. The Second Circuit has noted, and this Court agrees, that "[t]he prevailing rule . . . is that when a Plaintiffs brings a federal statutory claim seeking legal relief, laches cannot bar that claim, at least where the statute contains an express limitations period within which the action is timely." Ivani Contracting Corp. v. City of New York, 103 F.3d 257, 260 (2d Cir. 1997). The Court does not find an equitable reason to bar

the claim on timeliness grounds because it is brought both within the statute of limitations and within a reasonable time frame. In any event, Plaintiffs cite to no direct evidence that Defendant was on notice of the foreclosure sale; only the circumstantial evidence that Daniel Cook, president of the Union and member of the Board of Trustees, was personally and individually on notice of a potential sale. Contrarily, Defendant has deposition evidence that it did not know of a foreclosure sale. Exhibits 4, 31, 32. Defendant also has meeting minutes demonstrating that, as of May 23, 2013, the Plan knew of the *possibility* of a sale (impliedly, via Daniel Cook) but that when it attempted to verify whether a sale had occurred, they received what they understood to be verification that "nothing had changed." Exhibit 33.

The Court finds that the equities weigh squarely in favor of the workers and their pensions. Public policy disfavors allowing employers to withdraw from underfunded pension plans without consequence and to the detriment of workers who have provided years of service. As discussed *supra*, Plaintiffs were on actual and constructive notice of this liability when they purchased the property. Plaintiffs benefit from the skills and experience of the long-term workers whose pensions are at risk. The Court agrees with Defendant that the fair outcome is to protect those workers' pensions.

### VI. CONCLUSION

**Therefore, IT IS ORDERED that [67] Defendant's Motion for Summary Judgment is GRANTED and [68] Plaintiffs' Motion for Summary Judgment is DENIED.** Judgment is entered in favor of Defendant on Defendant's counter-claim for payment of withdrawal liability. The Clerk of Court is instructed to close this case.

DATED: September 27, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**